1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                          NORTHERN DISTRICT OF CALIFORNIA
7
8    BASEL ACTION NETWORK, *et al.*,              No. C-11-6185 EMC
9              Plaintiffs,
10        v.                                      **ORDER DENYING DEFENDANTS'
                                                  MOTION TO DISMISS**
11   UNITED STATES ENVIRONMENTAL
     PROTECTION AGENCY, *et al.*,                 **(Docket No. 13)**
12
13             Defendants.
     _____/
14
15
16        Defendants' motion to dismiss Plaintiffs' complaint came on for hearing before the Court on
17   May 8, 2012.  Docket No. 13.  For the reasons set forth below, the Court **DENIES** Defendants'
18   motion to dismiss.
19                    I.    **FACTUAL & PROCEDURAL HISTORY**
20        The Toxic Substances Control Act ("TSCA") was enacted to prevent unreasonable risks of
21   injury to human health or the environment associated with chemical substances.  15 U.S.C. § 2601 *et*
22   *seq.*  Under Section 21, the TSCA's citizen petition provision, any person may petition EPA "to
23   initiate a proceeding for the issuance, amendment, or repeal of a rule under" the TSCA sections.  *Id.*
24   § 2620(a).  Once the petition is filed, EPA has 90 days to either grant or deny the request to initiate a
25   rulemaking.  *Id.* § 2620(b)(3).  If EPA denies the petition or fails to respond within 90 days, the
26   petitioner has an additional 60 days to file a civil suit in federal court to compel a rulemaking
27   proceeding as requested in the petition.  *Id.* § 2620(b)(4)(A).
28

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1        Pursuant to this citizen petition provision, Plaintiff Basel Action Network ("BAN")

2    submitted a petition to initiate rulemaking on the U.S. Navy's sinking exercise program ("SINEX")

3    to limit the ocean dumping of polychlorinated biphenyls ("PCBs").  Compl. ¶ 12.  BAN mailed its

4    petition to EPA by registered mail on July 1, 2011, which included delivery confirmation.  Docket

5    No. 13-1.  EPA received the petition in its mail room on July 7, 2011, and delivered the petition to

6    the principal office of the EPA Administrator on July 8, 2011.  *See* Docket No. 13-1; Docket No. 21-

7    1, Exh. A.  BAN then e-mailed EPA a courtesy copy of the petition on July 12, 2011.  Docket No.

8    13-2, Exh. A.  By letter dated July 21, 2011, EPA informed BAN that the petition had been received

9    "by email dated July 12, 2011, and U.S. mail."  Docket No. 13-2, Exh. B.

10        EPA did not issue a response to BAN's petition within the prescribed 90-day period.  Compl.

11    ¶ 48.  BAN contacted EPA to inquire about the status of the petition, but received no response.

12    Compl. ¶¶ 4, 48.  Following EPA's failure to respond, Plaintiffs BAN and Sierra Club filed this suit

13    on December 9, 2011 to compel EPA to initiate rulemaking on SINEX.  Compl. ¶¶ 5, 6.

14        Defendants now move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil

15    Procedure 12(b)(1).  Docket No. 13 ("Motion").  Defendants contend that the 90-day period under

16    Section 21 began to run on July 8, 2011, the date the principal office of the EPA Administrator

17    received the petition.  Motion at 5.  After the 90-day period expired on October 6, 2011, Plaintiffs

18    would have had 60 days to file suit, *i.e.* no later than December 6, 2011.  As Plaintiffs filed the

19    instant case on December 9, 2011, Defendants contend that Plaintiffs' complaint is untimely and that

20    the Court therefore lacks subject matter jurisdiction over this case.  Motion at 5.  Plaintiffs contend

21    that the instant suit was timely filed based on the July 12, 2011, the date of receipt indicated in

22    EPA's acknowledgment letter.  Docket No. 19 at 3 ("Opp.").  Plaintiffs thus argue that Plaintiffs

23    reasonably relied on EPA's acknowledgment letter, and equitable tolling should apply.  Opp. at 5.

24                       **II.   DISCUSSION**

25        As an initial matter, the Court must determine whether Section 21's time prescriptions

26    operate as a statute of limitations or as a jurisdictional requirement.  "If it is the former, the

27    traditional defenses of waiver, estoppel, and equitable tolling apply.  If it is the latter, such defenses

28

**United States District Court**
For the Northern District of California

1　are inapplicable, and [the Court] lack[s] subject matter jurisdiction over the case entirely." *Rouse v.*

2　*U.S. Dep't of State*, 567 F.3d 408, 415 (9th Cir. 2009) (internal citations omitted).

3　A.　　Section 2620(b)(4)(A)'s Time Limits Are Not Jurisdictional

4　　　　To determine whether Section 21's time prescriptions are jurisdictional, the Court first looks

5　to the face of the statute. *Zipes v. Trans United World Airlines*, 455 U.S. 385, 393 (1982). "A rule

6　is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope

7　shall count as jurisdictional.'" *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Arbaugh v. Y*

8　*& H Corp.*, 546 U.S. 500, 515 (2006)). "But if 'Congress does not rank a statutory limitation on

9　coverage as jurisdictional, courts should treat the restriction as nonjurisdictional.'" *Id.* (quoting

10　*Arbaugh*, 546 U.S. at 516). If the text of the statute is unclear, the Court then turns to the legislative

11　purpose of the statute and determines whether construing it strictly would frustrate its purpose. *See*

12　*Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007).

13　　　　The Supreme Court has commented extensively on the distinction between jurisdictional and

14　claim-processing statutes. Most recently, it noted that "[t]his Court has endeavored in recent years

15　to 'bring some discipline' to the use of the term 'jurisdictional.' [Citation]. Recognizing our 'less

16　than meticulous' use of the term in the past, we have pressed a stricter distinction between truly

17　jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional

18　'claim-processing rules,' which do not." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting

19　*Henderson v. Shinseki*, 562 U.S. ----, 131 S.Ct. 1197, 1202-1203 (2011); *Kontrick v. Ryan*, 540 U.S.

20　443, 454–455 (2004)). Because construing a rule as jurisdictional carries harsh penalties, including

21　the potential to waste substantial time and money only to have a court later determine (on a party's

22　motion or *sua sponte*) that it lacks jurisdiction, "[c]ourts, we have said, should not lightly attach

23　those 'drastic' consequences to limits Congress has enacted." *Id.* (quoting *Henderson*, 131 S.Ct. at

24　1202); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1244 (2010) ("Our recent cases evince a

25　marked desire to curtail such drive-by jurisdictional rulings, which too easily can miss the critical

26　difference[s] between true jurisdictional conditions and nonjurisdictional limitations on causes of

27　action.") (internal citations and quotation marks omitted). The Court has thus focused on *Arbaugh*'s

28

United States District Court

For the Northern District of California

mandate that Congress "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional" before courts treat it as such.  546 U.S. at 515.

To that end, the Supreme Court has examined several factors to distinguish between jurisdictional and claim-processing rules, including, *inter alia*: (1) the strength of the statute's language, including whether a statute specifies "a consequence for noncompliance with its timing provisions," *see Dolan v. United States*, 130 S. Ct. 2533, 2539 (2010) (internal citations and quotation marks omitted); (2) whether the time prescriptions are contained within a jurisdiction-conferring statute, *see Zipes*, 455 U.S. at 393; (3) whether courts have historically construed the statute as jurisdictional, *see Bowles v. Russell*, 551 U.S. 205, 209 (2007) (construing 28 U.S.C. § 2107(c) as jurisdictional based largely on the fact that "[t]his Court has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional'"); and (4) whether treating the requirement as jurisdictional would comport with Congress's intent in enacting the substantive statute at issue, *see Gonzalez*, 132 S. Ct. at 650 ("Treating § 2253(c)(3) as jurisdictional [] would thwart Congress' intent in AEDPA to eliminate delays in the federal habeas review process" because it would allow parties to raise the defense at any time; it could require the Supreme Court to "vacate and remand with instructions to dismiss the appeal based on a § 2253(c)(3) defect that [was] raised for the first time in response to a petition for certiorari.") (citations and quotation marks omitted).

While these general factors can be useful, the overarching inquiry is whether Congress has clearly intended to create a jurisdictional requirement. *Henderson*, 131 S. Ct. at 1203 ("Under *Arbaugh*, we look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.'").  In *Gonzalez*, for example, the Supreme Court considered whether a district court's failure to issue a sufficiently-detailed certificate of appealability ("COA") in a habeas corpus case rendered the court of appeals without jurisdiction to consider the appeal.  *Gonzalez*, 132 S. Ct. at 647.  The statute at issue required petitioners to obtain a COA before appealing the district court's final orders.  *See* 28 U.S.C. § 2253(c).  The parties agreed the requirement that the petitioner obtain the COA was jurisdictional.  § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.").  The parties also agreed that the statute imposed a *non*-jurisdictional requirement that the petitioner must make "a substantial

United States District Court

For the Northern District of California

showing of the denial of a constitutional right" in order to obtain the COA.  § 2253(c)(2).  The question was whether a third requirement, that "[t]he certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2)," was jurisdictional.  § 2253(c)(3).  The Court held that it was not, and that the district court's failure to "'indicate' the issue on which Gonzalez had made a substantial showing of the denial of a constitutional right" did not "deprive[] the Court of Appeals of the power to adjudicate Gonzalez's appeal."  *Gonzalez*, 132 S. Ct. at 648.  The Court found that while (c)(1) clearly indicates a jurisdictional requirement, by stating that an appeal "may not be taken" absent compliance with its provisions, the remaining subsections of § 2253(c) merely impose claim-processing "threshold condition[s] for the issuance of a COA."  *Id.* at 649.  Unlike (c)(1), (c)(3) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [appeals] courts."  *Id.* (quoting *Arbaugh*, 546 U.S. at 515).

Similarly, in *Zipes v. Trans United World Airlines*, the Supreme Court also looked at the face of the statute at issue and held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to a suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  455 U.S. at 393.  Although the language of the statute at issue in *Zipes* was mandatory, requiring that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice," the Court declined to hold that it was jurisdictional because the language was not contained within a jurisdiction-conferring statute, the statute did not explicitly "limit jurisdiction to those cases in which there has been a timely filing with the EEOC," the legislative history indicated Congress intended for it to be a standard statute of limitations, prior cases had not treated it as jurisdictional, and the statute's remedial purpose was served by such a construction.  *Id.* at 393-98 (quoting 42 U.S.C. § 20003-5(e)(1)).

Accordingly, with these principles in mind, the Court turns to the statute at issue in this case, § 2620(b)(4)(A), focusing on whether Congress clearly intended to create a jurisdictional requirement.

United States District Court

For the Northern District of California

1    1.    <u>Text and Structure of the Statute</u>

Set forth in full, § 2620(b)(4)(A) provides:

> "If the Administrator denies a petition filed under this section (or if the Administrator fails to grant or deny such petition within the 90-day period) the petitioner may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition. Any such action shall be filed within 60 days after the Administrator's denial of the petition or, if the Administrator fails to grant or deny the petition within 90 days after filing the petition, within 60 days after the expiration of the 90-day period."

Although one Supreme Court case could be construed to indicate that statutory time limits are generally jurisdictional, *see Bowles v. Russell*, 551 U.S. 205, 210 (2007) (crediting "the jurisdictional significance of the fact that a time limitation is set forth in a statute"), subsequent decisions have retreated from such a view. *See Reed Elsevier*, 130 S. Ct. at 1247-48 ("*Bowles* did not hold that . . . all statutory conditions imposing a time limit should be considered jurisdictional. Rather, *Bowles* stands for the proposition that context, including this Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional."); *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011) (explaining that as a general matter, "[f]iling deadlines, such as the 120-day filing deadline at issue here, are quintessential claim-processing rules," and describing *Bowles* as applying only when Congress "attach[es] the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule"); *see also id.* at 1203 ("*Bowles* did not hold categorically that every deadline for seeking judicial review in civil litigation is jurisdictional. Instead, *Bowles* concerned an appeal from one court to another court. The 'century's worth of precedent and practice in American courts' on which *Bowles* relied involved appeals of that type."). *Bowles* thus does not stand for the proposition that all statutory time limits are jurisdictional. Indeed, recent Ninth Circuit authority states just the opposite. *See Irigoyen-Briones v. Holder*, 644 F.3d 943, 948-49 (9th Cir. 2011) ("The [Supreme] Court characterized its recent decisions as holding that 'time prescriptions, however emphatic, are not properly typed jurisdictional.' And that was so even where the Court itself had described them as 'mandatory and jurisdictional,' because the Court itself had been 'profligate in its use of the term.'") (quoting *Arbaugh*, 546 U.S. at 510).

In the instant case, the Court finds no clear indication that Congress intended for Section 21's time requirements to be jurisdictional because the text and structure of the time prescription are not suggestive of a jurisdictional bar.  First, and most importantly, Section 21's prescriptions are not readily calculable when, as here, the agency fails to respond to the petition.  Unlike a standard time limit that gives clear notice to the filing party, *see, e.g.*, 26 U.S.C. § 7431(d) (requiring a plaintiff to file suit "within 2 years after the date of discovery *by the plaintiff* of the unauthorized inspection or disclosure") (emphasis added), here the initial 90-day time period is a prescription for the *agency*'s action, not the petitioner.  The statute requires the agency to grant or deny the petition within 90 days from the time its own principal office receives and files the petition.  § 2620(b)(3) ("Within 90 days after filing of a petition described in paragraph (1), the Administrator *shall* either grant or deny the petition.") (emphasis added).  Thus, the agency's internal actions officially set the clock running, not the petitioner's.  If the agency denies the petition, the petitioner may seek judicial review within 60 days of the agency's decision.  However, it is only when the agency fails to comply with the statute's mandate that the time calculation at issue here comes into play.  That is, if the agency fails to act within the 90-day period as required by § 2620(b)(3), the petitioner can file suit within 150 days of the time the agency initially received and filed the petition in its principal office.  Yet such a date is not a public filing date readily knowable by the petitioner.  Rather, it is an internal date set for the agency's own use.  Thus, if the agency fails to act, the petitioner has no way to know precisely when its principal office received the petition.  Although it can estimate such a filing date by, *e.g.*, tracking its petition in the mail, it cannot know for certain – absent some indication from the agency – on what date the agency officially filed the petition.  Such an uncertain time prescription does not indicate a jurisdictional requirement predicated on a conventional bright-line rule; rather, it suggests an administrative claims-processing rule subject to a more amorphous event, consistent with the standard equitable remedies for untimeliness.

In addition, although Section 21 contains mandatory language, *see* § 2620(b)(4)(A) ("Any such action shall be filed . . . ."), the statute contains no emphatic language clearly suggestive of a jurisdictional limitation.  *Cf.* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction *shall be barred* unless the petition thereon is filed within six years

after such claim first accrues.") (emphasis added); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) (construing § 2501 as a jurisdictional bar); *Cf. also United States v. Brockamp*, 519 U.S. 347, 350 (1997) (construing statute allowing tax refund claims against the IRS as jurisdictional in part because it "sets forth its time limitations in unusually emphatic form," including stating, *inter alia*, "[n]o credit or refund shall be allowed or made after the expiration of the period of limitation prescribed ... unless a claim for ... refund is filed ... within such period") (citing 26 U.S.C. § 6511(b)(1)); *Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 871-72 (9th Cir. 2009) (construing 26 U.S.C. § 7431 as jurisdictional because the bulk of the statute "limits the scope of th[e] general waiver of immunity," and uses absolute language such as "[n]otwithstanding any other provision of law," which indicates "[n]o provision of law may abrogate that prescription, including any provision that may provide for equitable tolling or waiver"). Here, while the statute uses the term "shall," its remaining language and procedural prescriptions with respect to citizen petitions do not suggest an intent to limit the government's waiver of sovereign immunity. *See, e.g.*, § 2620(b)(5) ("The remedies under this section shall be in addition to, and not in lieu of, other remedies provided by law."). The statutory language imposing the time limit does not, in contrast to the statutes at issue in the cases discussed above, plainly establish an absolute jurisdictional-type bar as a consequence of non-compliance.

Notably, the Supreme Court has clarified that mandatory language is not dispositive, because it "has long rejected the notion that all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional." *Gonzalez*, 132 S. Ct. at 651 (internal citations and quotation marks omitted); *see also Dolan v. United States*, 130 S. Ct. 2533, 2539 (2010) ("We concede that the statute here uses the word 'shall,' § 3664(d)(5), but a statute's use of that word alone has not always led this Court to interpret statutes to bar judges (or other officials) from taking the action to which a missed statutory deadline refers."). The use of the word "shall" does not necessarily imply a jurisdictional consequence. For instance, in *Holland v. Florida*, the Court held that AEDPA's statute of limitations, 28 U.S.C. § 2244(d) (providing that "[a] 1-year period of limitation shall apply"), is not jurisdictional and is subject to tolling because it "does not set forth an inflexible rule requiring dismissal whenever its clock has run," tolling would not change the substantive rights available, the

**United States District Court**

For the Northern District of California

period of limitation was not overly long, and equity was common in the context of habeas.  130 S.

Ct. 2549, 2560 (2010) (internal citations and quotation marks omitted).  *See also Henderson ex rel.*

*Henderson v. Shinseki*, 131 S. Ct. at 1204-06 (statute providing that person seeking Veterans Court

review "shall file a notice of appeal with the Court within 120 days" was not jurisdictional because

it did not speak in jurisdictional terms, it was placed in the "procedure" section of the statute, the

jurisdictional section did not refer to the time limit, and there was clear congressional intent to

construe veterans' benefit claims in favor of veterans); *Burnett v. New York Cent. R.R.*, 380 U.S.

424, 426 (1965) (provision mandating that "no action shall be maintained . . . unless commenced

within three years of the day the cause of action accrued," was subject to equitable tolling).

Indeed, statutes with more emphatic mandatory language than the instant statute have

nonetheless been construed as non-jurisdictional.  For example, the Ninth Circuit has held that 28

U.S.C. § 2401(a), which states that "every civil action commenced against the United States shall be

barred unless the complaint is filed within six years," is not jurisdictional but "erects only a

procedural bar."  *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997).  Although

courts have questioned the continued viability of *Cedars-Sinai* after the Supreme Court ruled in

*Sand*, 552 U.S. 130, that § 2501 (which contains similar language with respect to the Court of

Federal Claims) is jurisdictional, *Cedars-Sinai* remains binding in this Circuit.  Moreover, district

courts have distinguished § 2501 from § 2401, noting that the Supreme Court's analysis with respect

to § 2501 "do[es] not neatly translate to § 2401(a) because § 2501 has been long interpreted as a

jurisdictional statute."  *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 5:09-CV-02502 EJD,

2011 WL 5038356, at *5 (N.D. Cal. Oct. 24, 2011); *see Sand*, 552 U.S. at 134-39 (focusing largely

on the uniform treatment of § 2501 as jurisdictional for over 100 years in holding that waiver did not

apply).  Section 2401(a), like the statute at issue in this case, contains no such history of

jurisdictional interpretation.  *Cf. Bowles, supra*, 551 U.S. at 209.

While Section 21's provision regarding time limits is contained in a subsection along with

the provision conferring jurisdiction on the federal district courts, that statutory structure is not

dispositive.  In *Gonzalez v. Thaler*, 132 S. Ct. at 651, the Court held, "Mere proximity will not turn a

rule that speaks in nonjurisdictional terms into a jurisdictional hurdle."  Indeed, *Gonzalez* noted that

while § 253(c)(3) was "in a section containing jurisdictional provisions," such proximity merely "highlights the absence of clear jurisdictional terms in § 2253(c)(3)." *Id.* Here, the time limits imposed on petitioners do not use jurisdictional terms, as they do not specify what consequences will obtain for failure to comply with the time limits, nor do they even impose a method by which a petitioner could find out when the time limit began running if the agency failed to so inform him or her. *See Clark v. Bonded Adjustment Co.*, 176 F. Supp. 2d 1062, 1068 (E.D. Wash. 2001) ("While one part of sub-section (d) is clearly jurisdictional (as it confers jurisdiction on the Federal and state courts), the time limit language itself does not 'speak in jurisdictional terms or refer in any way to the jurisdiction of the federal courts.'") (quoting *Zipe*s, 455 U.S. at 394). Thus, there is no clear indication in the statutory language that Congress intended the time limits to be jurisdictional. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) ("[W]e attach no particular significance to the fact that this statute of limitations appears in the same sentence in which the jurisdiction provision appears. Nothing in the structure of that sentence tells us that the time limitation was also a jurisdictional limitation.").

2.     Policy Considerations

Policy reasons for distinguishing between jurisdictional and claim-processing rules further support construing Section 21 as a claim-processing rule. *See Gonzalez*, *supra*, 132 S. Ct. at 650. For example, in the context of statutes providing for judicial review of agency action, district courts in the D.C. Circuit have noted that construing such statutes as jurisdictional "impart[s] finality into the administrative process, thereby conserving administrative resources." *Envtl. Def. Fund v. Thomas*, 657 F. Supp. 302, 307 (D.D.C. 1987) *aff'd sub nom. Envtl. Def. Fund v. Reilly*, 909 F.2d 1497 (D.C. Cir. 1990). However, in the instant case, there is no agency action or decision that requires finality; rather, Plaintiff seeks judicial review of agency *inaction*. The *Thomas* court recognized such a paradox with respect to Section 21 and noted:

> A complete failure to respond to a section 21 petition within 90 days, however, is in no way comparable to an administrative adjudication or an administrative rulemaking issued after notice and comment. The factors weighing in favor of finality in these latter contexts are largely absent here, where the agency may not expend any resources at all.

**United States District Court**
For the Northern District of California

*Id.* It is difficult to discern the agency's interest in finality when, as the statue contemplates, the time limit applies to situations where the agency has failed to act at all.

### 3. Congressional Intent

The congressional purpose behind Section 21 also supports the Court's construction. As the *Thomas* court noted, "Congress designed section 21 to promote citizen participation in the rulemaking process and to ensure that judicial review of the agency's response would not be frustrated through agency inertia or indifference." *Thomas*, 657 F. Supp. at 307. A Senate Report accompanying the legislative history behind the citizens' petition provision of TSCA indicates that "[t]he responsiveness of government is a critical concern and the citizens' petition provision will help to protect against lax administration of the bill." Sen. Rep. No. 94-698, U.S. Code Cong. & Admin. News. 1976, at 4491, 4503. Thus, Congress intended for citizens to be able to participate in the process and receive appropriate attention from EPA. Similarly, the report from the House of Representatives indicates that § 2620(b)(4)(A) was designed to "afford[] greater rights to a person petitioning for the issuance of a rule or order because in such a situation the Administrator will not previously have addressed the issue by rule or order." *Walker v. U.S. E.P.A.*, 802 F. Supp. 1568, 1574 (S.D. Tex. 1992) (citing H. Rep. No. 1679, 94th Cong., 2nd Sess. 98, 99 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4491, 4539, 4583–4584; and Legislative History of the Toxic Substances Control Act, 667, 711–712 (1976)). Such petitioners therefore have the right to a de novo proceeding. *Id.*

The report makes no mention of the time limits as constraining petitioners' rights; rather, they are a mechanism to ensure the *agency* acts in a timely manner. *Id.* ("By requiring the Administrator to act on any such petition within 90 days, the conferees will facilitate such a petitioner's right to seek judicial review should the Administrator deny the petition. Otherwise, the Administrator could avoid any judicial review simply by failing to take any action."). Thus, the statute's purpose of encouraging citizen involvement and agency rapid response thereto would be ill-served by a strict jurisdictional time limit on judicial review. *See also Holland*, 130 S. Ct. at 2560 ("In the case of AEDPA, the presumption's strength [in favor of equitable tolling] is reinforced by the fact that equitable principles have traditionally governed the substantive law of habeas corpus.")

1  (internal citations and quotation marks omitted); *Henderson*, 131 S. Ct. at 1204-06 (discussing

2  Congress's solicitude for veterans in construing time limit for appealing veterans' benefit claims as

3  non-jurisdictional).

4          4.    <u>Contrary Interpretations</u>

5          The Court recognizes that a D.C. district court has found Section 21's time restrictions to be

6  jurisdictional, to which traditional defenses such as equitable estoppel do not apply.  In *Center for*

7  *Biological Diversity v. Jackson*, the D.C. district court found that it lacked subject matter jurisdiction

8  over portions of the plaintiff's claims that were untimely filed because Section 21's time limit was

9  jurisdictional.  815 F. Supp. 2d 85, 91 n.1, 94 (D.D.C. 2011).  However, *Jackson* was decided under

10  D.C. Circuit precedent that all time prescriptions related to judicial review of agency action are

11  jurisdictional.  *Id.* at 91 n.1 ("[T]ime limits such as the one at issue here are considered

12  jurisdictional.") (citing *P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir.

13  2008); *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 277 (D.C. Cir. 2003)); *Eagle-Picher Indus.,*

14  *Inc. v. U.S. E.P.A.*, 759 F.2d 905, 911 (D.C. Cir. 1985) ("This court has repeatedly recognized that

15  statutory time limits on petitions for review of agency action are jurisdictional in nature.").  As

16  discussed above, that precedent does not comport with the law in this Circuit.  *See, e.g.*, *Carpenter v.*

17  *Dep't of Transp.*, 13 F.3d 313 (9th Cir. 1994) (sixty-day time limit under Hobbs Act for interstate

18  truck driver to file petition for judicial review of safety regulation issued by Federal Highway

19  Administration could have been subject to equitable tolling, but litigants in that case did not show

20  that tolling was warranted); *Cedars-Sina*i, 125 F.3d at 770 (construing statute of limitations under

21  Administrative Procedure Act as non-jurisdictional, where plaintiffs brought declaratory judgment

22  action challenging Health Care Financing Administration (HCFA) policy making Medicare

23  coverage unavailable for certain investigational medical devices).  Nor does it comport with the

24  Supreme Court's decisions in *Henderson*, 131 S. Ct. at 1202, discussed above, or *Bowen v. City of*

25  *New York*, 476 U.S. 467, 480-81 (1986), which unanimously ruled that equitable tolling applies to

26  the limitations period for bringing actions in district court to review agency denials of Social

27  Security disability benefits.

28

**United States District Court**
For the Northern District of California

1        5.      Conclusion

2        Accordingly, the Court concludes that Section 21's time limit for petitioners to obtain

3    judicial review of an agency's failure to initiate rulemaking is a non-jurisdictional claim-processing

4    rule.

5    B.      Equitable Tolling is Available Under § 2620(b)(4)(A)

6        As noted above, the Supreme Court has articulated a general rule that the rebuttable

7    presumption that equitable tolling applies to suits against private defendants applies as well to suits

8    against the United States. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990).  However,

9    courts have differed as to whether and how they apply *Irwin* to cases such as the one at bar.  First,

10   there is some confusion among courts as to whether a non-jurisdictional statute, such as the one

11   here, may nonetheless be immune from equitable tolling.  Second, there is some debate over *Irwin*'s

12   scope and whether it applies to statutes such as § 2620(b)(4)(A), which concerns judicial review of

13   an agency's action (or here, inaction).

14       1.      *Irwin*'s Relationship to Jurisdiction

15       First, courts have differed as to whether they apply *Irwin* as merely the flip side of the

16   jurisdictional coin (*i.e.*, as one way to determine whether a statute is jurisdictional), or whether *Irwin*

17   (and the availability of equitable tolling more generally) is a separate inquiry from the jurisdictional

18   nature of a statute.

19       For example, in *Rouse*, the Ninth Circuit clearly stated that unless a statute is jurisdictional,

20   equitable tolling applies.  *Rouse v. U.S. Dept. of State*, 567 F.3d 408, 415 (9th Cir. 2009) ("Before

21   proceeding further, we must decide whether [the statute] operates as a statute of limitations or as a

22   jurisdictional bar.  If it is the former, the traditional defenses of 'waiver, estoppel, and equitable

23   tolling' apply.  [Citation].  If it is the latter, such defenses are inapplicable, and we lack subject

24   matter jurisdiction over the case entirely.  [Citation].") (quoting *United States v. Locke*, 471 U.S. 84,

25   94 n.10 (1985) ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel,

26   and equitable tolling."); citing *Zipes*, 455 U.S. at 393).  *Rouse* determined the statute was not

27   jurisdictional based on *Irwin*'s presumption in favor of equitable tolling and its conclusion that the

28   statute did not rebut that presumption.  *Id.* at 415-17.  *Chung*, the D.C. Circuit case on which *Rouse*

United States District Court

For the Northern District of California

1  relied, similarly used *Irwin* as a tool to determine whether the statute was jurisdictional.  333 F.3d at

2  277.  Under this interpretation, *Irwin* is simply an interpretive tool for determining whether a statute

3  is jurisdictional (*i.e.*, a thumb on the scale in favor of a non-jurisdictional construction), rather than a

4  separate hurdle a plaintiff must clear before applying equitable tolling.  Conversely, the way to rebut

5  *Irwin* is to show that a statute is jurisdictional.  *See Aloe Vera of Am., Inc. v. United States*, 580 F.3d

6  867, 872 (9th Cir. 2009) (finding that *Irwin*'s presumption has been rebutted when Congress

7  "create[s] a strictly jurisdictional limitations period") (quoting *Cedars-Sinai*, 125 F.3d at 770; citing

8  *Irwin*, 498 U.S. at 96); *Sand*, 552 U.S. at 133 (interpreting *Brockamp* as involving a "jurisdictional"

9  statute of limitations because *Brockamp* had determined that the statute at issue rebutted *Irwin*'s

10  presumption in favor of equitable tolling) (citing *United States v. Brockamp*, 519 U.S. 347, 352-53

11  (1997)).[1]

12        Similarly, the Federal Circuit has recently noted that "[t]he 'jurisdictional' determination []

13  merges into the question of whether Congress intended to allow equitable tolling of [an act's] statute

14  of limitations."  *Cloer v. Sec'y of Health & Human Services*, 654 F.3d 1322, 1341 (Fed. Cir. 2011),

15  *cert. denied*, 132 S. Ct. 1908 (2012).  The court stated further, "[t]he term 'jurisdictional' has no

16  notable meaning in such contextual inquiries [into a statute's purpose] and is merely convenient

17

18      [1] This view of *Irwin* also makes sense in light of its history.  As the D.C. Circuit explained

19  in *Chung*, "[a]t least until 1990, it was not uncommon for a court to deem a time limit for suing the
   Government 'jurisdictional' and hence not subject to judicial malleation" such as equitable tolling or

20  waiver.  333 F.3d at 276.  In 1990, the Supreme Court in *Irwin* sought to remedy the inconsistent
   treatment of time limits for suits against the government.  The Supreme Court considered an appeal

21  from the Fifth Circuit's decision holding that "the filing period contained in § 2000e-16(c) is
   jurisdictional, and therefore the District Court lacked authority to consider [] equitable claims."  489

22  U.S. at 94.  The Court reversed that decision and found that the statute was not jurisdictional; to the
   contrary, the Court held that "the same rebuttable presumption of equitable tolling applicable to suits

23  against private defendants should also apply to suits against the United States."  *Id.* at 95.  Thus,
   *Irwin* was designed to mandate that unless Congress "provide[s] otherwise," time limits for suits

24  against the government are presumed to be non-jurisdictional, that is, subject to equitable tolling.
   *Id.* at 96.

25      In this way, *Irwin* was designed to remedy the same problem as *Arbaugh* later addressed in

26  the context of statutes in general.  In 2006, in response to courts' "profligate" use of the term
   "jurisdiction," *Arbaugh* imposed a clear statement rule that unless Congress "rank[s] a statutory

27  limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in
   character."  546 U.S. at 510, 516.  Because both cases dealt with the same basic concern, one could

28  read *Irwin* to establish a presumption with respect to suits against the government that *Arbaugh* later
   extended in substance to all statutory limitations.

United States District Court

For the Northern District of California

shorthand for statutory limits that are absolute and require a court to consider timeliness questions without reference to equitable considerations." *Id.* (citing *Sand*, 552 U.S. at 133-34). The Supreme Court's framework in *Sand* supports this approach, as it contrasted standard statutes of limitation (which are subject to forfeiture, waiver, and equitable tolling) from more absolute time limits (which, "[a]s convenient shorthand," the court labels "jurisdictional"). *Sand*, 552 U.S. at 133-34; *see also Zipes*, 455 U.S. at 393 ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Under this approach, there is only one question to resolve: Is the statute jurisdictional? If it is, no equitable considerations apply. If it is not, such considerations are available. As discussed above, the Court has already resolved this question in Plaintiffs' favor.

In contrast, other cases seem to suggest that even if a statute is non-jurisdictional, equitable tolling may nonetheless be unavailable. For example, in *Holland*, the Supreme Court applied *Irwin* after it had already concluded the statute at issue was non-jurisdictional. *See* 130 S. Ct. 2549, 2560 ("We have previously made clear that a nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in *favor* 'of equitable tolling.'") (emphasis in original) (quoting *Irwin*, 498 U.S. at 95); *see also Eberhart v. United States*, 546 U.S. 12, 15, 18-19 (2005) (discussing certain rules of procedure that were not jurisdictional and therefore subject to waiver and forfeiture, but suggesting that if the government had properly objected, they would not be subject to other equitable considerations like tolling because of the rules' rigidity). In addition, in *Henderson*, the Supreme Court found the statute to be non-jurisdictional, but noted that the parties had not asked it to determine whether equitable tolling was available because "the Government [had not] disputed that the deadline is subject to equitable tolling if it is not jurisdictional." 131 S. Ct. at 1206 n.4. These cases suggest that whether a statute is jurisdictional is not necessarily coextensive with whether it allows for equitable tolling.

The above inconsistencies are perhaps simply additional evidence of the Supreme Court's frustration that courts "have been less than meticulous" and "have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions." *Kontrick v. Ryan*, 540 U.S. 443, 454

United States District Court
For the Northern District of California

(2004).  Given that *Rouse* suggests the inquiry into jurisdiction and the availability of equitable relief are part on the same question, the Court finds that equitable tolling applies.  Nonetheless, because the applicable precedent is unclear, the Court also examines whether equitable tolling is available even though it has already concluded the statute is non-jurisdictional.

2.      *Irwin*'s Scope & Applicability

To the extent the jurisdictional inquiry does not resolve the question whether equitable tolling is available, there is further confusion as to whether *Irwin*'s presumption in favor of tolling applies to the instant case.  Some courts have suggested that *Irwin's* general presumption in favor of traditional defenses does not apply to every suit against the United States.  Instead, *Irwin's* presumption only applies where the underlying cause of action is "sufficiently similar" to a traditional cause of action between private parties.  *United States v. Brockamp*, 519 U.S. 347, 350 (1997) (assuming in dicta that *Irwin*'s presumption applies because "a tax refund suit and a private suit for restitution are sufficiently similar to warrant" employing the presumption); *see also Chung*, 333 F.3d at 277 (construing *Irwin* as subject to a qualification that "the type of litigation at issue must not be so peculiarly governmental that there is no basis for assuming customary ground rules to apply"); *Rouse v. U.S. Dept. of State*, 567 F.3d 408, 416 (9th Cir. 2009) (adopting *Chung* and applying *Irwin* because the "claims are sufficiently similar to traditional tort actions such as misrepresentation and false light to warrant the application of *Irwin*'s rebuttable presumption"); *Jackson*, 815 F. Supp. 2d at 91 n.1 (citing *Chung* and concluding that Section 21 was a jurisdictional prerequisite that was not subject to equitable exceptions such as equitable tolling).

Defendant construes *Rouse* as mandating that a suit against the government have a private-litigation analog in order to be subject to equitable tolling.  However, such a broad construction is unsupported for several reasons.  First, to read *Rouse* in such a way would be contrary to Supreme Court authority that pre- and post-dates *Rouse*.  Supreme Court cases before and after *Rouse* have applied *Irwin* without regard to any private analog; rather, they have simply applied a general presumption that equitable tolling is available unless a statute indicates otherwise.  *See, e.g.*, *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (finding statute of limitations for petitions for habeas corpus under the Antiterrorism and Effective Death Penalty Act was non-jurisdictional and

United States District Court

For the Northern District of California

subject to *Irwin*'s presumption in favor of equitable tolling, without discussing whether a habeas petition had any private analog); *see also Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling."'") (holding that three-year lookback period allowing IRS to collect taxes against a debtor was tolled during the pendency of a Chapter 13 bankruptcy proceeding) (quoting *Irwin*, 498 U.S. at 95).

Second, *Rouse* is factually distinguishable. *Rouse* considered a claim under the Privacy Act that fit within the narrow reading of *Irwin*, and applied the presumption with little analysis. 567 F.3d at 416 ("Here, Rouse claims that he was harmed by the Department's allegedly willful failure to disseminate and to maintain accurate records about the status of his case. Taking the allegations in the complaint as true, we must assume that the Department was willfully misrepresenting information to and about Rouse. We are satisfied that these claims are sufficiently similar to traditional tort actions such as misrepresentation and false light to warrant the application of *Irwin*'s rebuttable presumption."). *Rouse* thus had no occasion to consider (a) the full scope of *Irwin*'s presumption, and how closely a claim must mirror a private claim in order to fall within its confines; and (2) the Supreme Court's, and the Ninth Circuit's case law applying *Irwin* without considering the need for private comparison. Such a discussion was unnecessary because *Rouse* fit within the confines of a classic *Irwin* claim as defined by the D.C. Circuit in *Chung*. Thus, given its limited factual scope, *Rouse* cannot be read to dictate the boundaries of equitable tolling in all suits against the government.

Third, previous Ninth Circuit cases applied *Irwin* where there is no obvious private litigation analog, and without considering the need for such an analog. *See, e.g.*, *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1188 (9th Cir. 2001) (applying *Irwin* to 90-day period for filing motion to reopen before the Board of Immigration Appeals); *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991) (applying *Irwin* to challenge U.S. Forest Services's decision allowing timber sales under environmental laws without considering whether such a suit was similar to private suits). This Circuit has also read *Irwin* as merely comparing the types of time limits imposed, rather than the substantive rights at issue, between private suits and suits against the government. *See William G. Tadlock Const. v. U.S. Dept. of Def.*, 91 F.3d 1335, 1340 (9th Cir. 1996) ("Moreover, the time limits

**United States District Court**
For the Northern District of California

1   contained in former § 2409a are like those imposed on private litigants, and such time limitations are

2   customarily treated as statute of limitations subject to equitable tolling.") (citing *Irwin*, 498 U.S. at

3   95).  Since *Rouse* could not have overruled such cases absent en banc consideration (and in any

4   event, did not even mention these cases), the Court construes *Rouse* to avoid the implication that it

5   silently rejected them.

6           Fourth, subsequent, post-*Rouse* Ninth Circuit cases have also applied *Irwin* without

7   discussing any private-analog requirement and without citing to *Rouse* as establishing any such

8   standard.  *See, e.g.*, *Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 872 (9th Cir. 2009)

9   (applying *Irwin* presumption to claim against IRS for wrongful disclosure without discussing

10  private-suit comparison, and finding presumption rebutted by statutory language); *Marley v. United*

11  *States*, 567 F.3d 1030, 1035 (9th Cir. 2009) (citing *Irwin* in Federal Tort Claims Act case without

12  noting any need for private analog; rejecting *Irwin* presumption because the statute at issue had long

13  been construed as jurisdictional and therefore constituted an exception to *Irwin*) (citing *Sand*, 128

14  S.Ct. at 755-56).  Indeed, neither cites to *Rouse* at all.  Though these cases would arguably fall

15  within the private-analog requirement, their failure to even mention such a requirement further

16  counsels against construing *Rouse* to mandate such analysis in applying *Irwin*.[2]   Thus, to read *Rouse*

17  as prohibiting equitable tolling unless the suit against the government is analogous to a private suit

18  would be to disrupt longstanding Ninth Circuit practice and would not appear to be consistent with

19  Supreme Court jurisprudence.

20

21

22  _____

23          [2]  It should be noted that the language of *Irwin* itself does not appear to mandate such a
    construction. *Irwin*'s holding – "the same rebuttable presumption of equitable tolling applicable to

24  suits against private defendants should also apply to suits against the United States" – could be read
    simply to say that the presumption is the same regardless of the type of suit.  *Irwin*, 498 U.S. at

25  95-96.  Indeed, the Supreme Court has specifically warned against construing *Irwin* so narrowly.
    *See Scarborough v. Principi*, 541 U.S. 401, 422 (2004) ("Litigation against the United States exists

26  because Congress has enacted legislation creating rights against the Government, often in matters
    peculiar to the Government's engagements with private persons-matters such as the administration of

27  benefit programs.  Because many statutes that create claims for relief against the United States or its
    agencies apply only to Government defendants, *Irwin*'s reasoning would be diminished were it

28  instructive only in situations with a readily identifiable private-litigation equivalent.").  *Rouse* does
    not address *Scarborough*.

**United States District Court**

For the Northern District of California

1    Accordingly, based on the Supreme Court's recent formulation of *Irwin* in *Holland*, the

2  Court concludes that *Irwin* applies here.  However, the Court further concludes that even without

3  *Irwin*, alternative authority supports making tolling available under § 2620(b)(4)(A).

4            a.      Applying *Irwin* - Tolling is Available

5    If *Irwin* applies, nothing in the statute rebuts its presumption in favor of equitable tolling.

6  Courts that have found *Irwin*'s presumption to be rebutted have focused on congressional intent and

7  the statutory text, similar to the jurisdictional inquiry above which the Court has already resolved in

8  Plaintiffs' favor. *United States v. Brockamp*, 519 U.S. 347, 350 (1997) (to determine whether *Irwin*

9  has been rebutted, courts ask: "Is there good reason to believe that Congress did *not* want the

10  equitable tolling doctrine to apply?") (emphasis in original).  For example, in *Beggerly*, the Supreme

11  Court considered a twelve-year statute of limitations under the Quiet Title Act ("QTA"), which

12  permitted plaintiffs to name the United States as a party defendant within twelve years from "the

13  date the plaintiff or his predecessor in interest knew or should have known of the claim of the United

14  States." *United States v. Beggerly*, 524 U.S. 38, 48 (1998) (quoting 28 U.S.C. § 2409a(g)).  The

15  Supreme Court found that because the statute already allowed for one specific basis for tolling

16  (based on the date the plaintiff "knew or should have known" of the claim) and because of "the

17  unusually generous nature of the QTA's limitations time period, extension of the statutory period by

18  additional equitable tolling would be unwarranted." *Id.* at 48-49.  The Court also concluded that

19  "[e]quitable tolling of the already generous statute of limitations incorporated in the QTA would

20  throw a cloud of uncertainty over" the property rights at issue, and would therefore be "incompatible

21  with the Act." *Id.* at 49.

22    Similarly, in *Brockamp*, the Supreme Court concluded tolling was impermissible based on

23  the text of the statute because allowing for tolling would affect not just the procedural, but also the

24  substantive rights at issue. *United States v. Brockamp*, 519 U.S. 347, 350-52 (1997). Because the

25  statute imposed substantive limitations along with its time constraints, the Court concluded equitable

26  tolling would create "a kind of tolling for which we have found no direct precedent."  *Id.* at 352.

27  *Holland*, on the other hand, distinguished *Brockamp* and *Beggerly* on the basis of AEDPA's

28  statutory text and purpose, again applying many of the same factors at issue in a jurisdictional

1   analysis.  *See* 130 S. Ct. at 2560-61 (noting that equitable principles have traditionally governed

2   habeas corpus law); *id.* at 2561 (noting that the statute did not contain emphatic language, that it was

3   not detailed or technical, that it did not provide for an unusually generous limitations period, and

4   that tolling would not affect substantive rights); *id.* at 2562 (noting that tolling would not undermine

5   AEDPA's purposes).

6        In contrast to *Beggerly*, the time limit at issue in this case is only 150 days, rather than a

7   dozen years.  *See also Holland*, 130 S. Ct. at 2561 ("[I]n contrast to the 12-year limitations period at

8   issue in *Beggerly*, AEDPA's [one-year] limitations period is not particularly long.").  In addition, the

9   statute provides for no internal tolling criteria, and as discussed above, does not concern substantive

10   rights over which general tolling principles would create "a cloud of uncertainty," because here the

11   agency has failed to act at all, a situation expressly contemplated by the statute.  And unlike in

12   *Brockamp*, tolling here would not affect any substantive rights created by the statute; it would

13   merely extend the time for Plaintiffs to make the same claims under the same substantive rules.  As

14   discussed above and below, such tolling would not undermine the agency's interest in finality in this

15   case, nor would it prejudice the agency.  Instead, as in *Holland*, the fact that this statute was

16   designed to favor and encourage citizen petitions further weighs in favor of applying equitable

17   considerations.  In sum, the short duration, simple language, and pro-petitioner rights created by the

18   statute favor allowing for equitable tolling.

19            b.   Even if *Irwin* Does Not Apply, Tolling is Still Available

20        Even if *Irwin*'s presumption does not apply, however, the result would be the same in the

21   instant case.  Assuming *Irwin* is inapplicable, that would not, as Defendant argues, mandate a

22   finding that the statute does not permit equitable tolling.  That a presumption in favor of tolling does

23   not *apply* is not equivalent to a determination that tolling is *unavailable*, because the lack of a

24   presumption is not the same as rebutting a presumption; nor does it create a contrary presumption.

25   Indeed, as the Supreme Court noted in *Sand*, *Irwin* set forth a general rule to replace the previous

26   "ad hoc approach for determining whether a Government-related statute of limitations is subject to

27   equitable tolling."  552 U.S. at 137.  Without *Irwin*, the Supreme Court's prior holding in *Bowen*

28   would still support applying equitable tolling to the instant case.  *Bowen* considered a 60-day time

1   limit for seeking review of a final decision by the Secretary of Health and Human Services denying

2   social security benefits, which the Court construed as non-jurisdictional.  476 U.S. at 478.  The

3   Court found that even though the 60-day limit was a waiver of sovereign immunity, that did "not

4   answer the question whether equitable tolling can be applied to this statute of limitations, for in

5   construing the statute we must be careful not to assume the authority to narrow the waiver that

6   Congress intended, or construe the waiver unduly restrictively."  *Id.* at 479 (internal citations and

7   quotation marks omitted).  Instead, Supreme Court precedent mandated "that where consistent with

8   congressional intent, and called for by the facts of the case, it would apply a traditional equitable

9   tolling principle."  *Id.* (internal citations and quotation marks omitted).

10   C.      Equitable Tolling is Warranted in This Case

11          Having determined equitable tolling is available in the instant case, Plaintiffs argue tolling

12   should apply to them.  In order to demonstrate that equitable tolling is warranted in a particular case,

13   "the party invoking tolling need only show that his or her ignorance of the limitations period was

14   caused by circumstances beyond the party's control."  *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193

15   (9th Cir. 2001); *see also Irwin*, 498 U.S. at 96 ("We have allowed equitable tolling in situations

16   where the claimant has actively pursued his judicial remedies by filing a defective pleading during

17   the statutory period, or where the complainant has been induced or tricked by his adversary's

18   misconduct into allowing the filing deadline to pass."); *Villalvaso v. Odwalla, Inc.*,

19   1:10-CV-02369-OWW, 2011 WL 1585604, at *4 (E.D. Cal. Apr. 25, 2011) ("[E]quitable tolling is

20   reserved for situations in which a claimant has made a good faith error and is not applied where a

21   claimant is aware of the filing requirements yet fails to file a timely complaint due entirely to a lack

22   of diligence.").

23          The instant case presents somewhat of a close call.  On one hand, BAN arguably was or

24   should have been aware that the petition arrived on July 7, 2011, as BAN had used the U.S. Postal

25   Service's Delivery Confirmation services.  Docket No. 13-1.  EPA personnel signed and dated the

26   physical card that would have been returned to BAN, and the Track & Confirm history also stated

27   that the petition was received on July 7, 2011.  Docket No. 13-1; Docket No. 21-1, Exh. A.

28   Furthermore, EPA argues that its letter confirming receipt of BAN's petition did not suggest that the

1  petition was received and filed on July 12, 2011, but only stated that EPA had received BAN's

2  electronic courtesy copy on July 12, 2011, as well as by U.S. mail.  Docket No. 13-2, Exh. B.

3         On the other hand, EPA's description of events fails to accurately portray the reasonable

4  confusion as to when the statute of limitations began to run.  Section 21 describes the beginning of

5  the statute of limitations as the date on which the central office receives and files the petition.  As

6  noted above, this date is not one subject to knowledge by an outsider, except via confirmation from

7  EPA.  Indeed, BAN's delivery confirmation is arguably irrelevant here, as even EPA argues it does

8  not reveal the true date on which the statute began to run.  Since the date is triggered by an internal

9  event, EPA's own communications take on heightened significance.  Here, EPA sent BAN a

10 confirmation letter acknowledging receipt of the petition and provided only one date, July 12.

11 Furthermore, EPA's confirmation language is ambiguous and could reasonably be read in either of

12 two ways.  EPA stated that it had received the petition "by email on July 12, 2011, and by U.S.

13 mail."  This could mean either that EPA received both the paper and electronic versions of the

14 petition on July 12, or that it received only the electronic version on July 12, and received the paper

15 version on a different, unspecified date.  Either construction is arguably permissible given the

16 letter's language.[3]  Because EPA gave only one date, it is reasonable for BAN (and this Court) to

17 hold the EPA to that date rather than force BAN to be bound by a date never disclosed, especially

18 since BAN attempted to follow up with EPA and received no response.  *See* Self Decl. Ex. B (email

19 from BAN to EPA referencing July 12 as the date of receipt and asking if EPA would respond to the

20 petition).  Indeed, if the July 12 date had no significance, it is unclear what purpose EPA served by

21 disclosing that date to BAN in its confirmation letter.  This is not a case in which the plaintiff has

22 exhibited a lack of diligence; rather, BAN simply relied on the date EPA gave it in calculating the

23 time it had to petition for review of EPA's inaction.  Moreover, there is no prejudice to EPA under

24 this construction resulting from the difference of only a matter of a few days.

25

26

27        [3]  Indeed, if EPA received both the electronic and paper versions on the same day, it would
   seem redundant to state that it received the petition "by email July 12, 2011, and by U.S. mail July
28 12, 2012."

Accordingly, Plaintiffs have demonstrated that their ignorance of the limitations period was caused by circumstances beyond their control, namely EPA's own statements that were reasonably interpreted as a confirmation that it received the petition as of July 12, 2011.  Equitable tolling applies.

### III.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motion to dismiss the complaint.

This order disposes of Docket No. 13.


IT IS SO ORDERED.


Dated:  June 18, 2012

_____
EDWARD M. CHEN
United States District Judge